# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ROCK HILL DIVISION

| | |
|---|---|
| **Synsil Products Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | C/A No. 0:06-2415-CMC |
| v. ) | |
| ) | **O R D E R** |
| **Wayne Brothers, Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |
| | |
| **Wayne Brothers, Inc.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | C/A No. 0:06-3141-CMC |
| v. ) | |
| ) | **O R D E R** |
| **Synsil Products Inc.,** ) | |
| ) | |
| **Defendant.** ) | |
| _____) | |

These matters are before the court on cross-motions for summary judgment. For the reasons set forth below, the motions are granted in part and denied in part.[1]

## Wayne Brothers Motions for Partial Summary Judgment

Wayne Brothers, Inc., (WBI or Contractor) seeks partial summary judgment as to those claims and counterclaims asserted by Synsil Products Inc. (Synsil or Owner) which are founded on the premise that WBI committed a breach of contract when it placed a mechanic's lien on Synsil's property. Specifically, WBI seeks rulings that: (1) Section 13.1 of the contract between the parties

---

[1] In the interest of facilitating mediation planned in the near future, the court sets forth only a summary of its reasoning in this order. If the matter is not resolved in mediation, and if the court deems it necessary, it will explain its reasoning in more detail either on the record at the beginning of trial or in a memorandum opinion to be entered prior to entry of judgment.

(Contract) does not prohibit the Contractor from filing a mechanic's lien (as opposed to prohibiting the Contractor from allowing placement of liens by subcontractors); (2) any such prohibition would be void as against public policy (as set forth in S.C. Code § 29-7-20(2)); and (3) any such prohibition would be without consideration. The court finds in favor of WBI on the first ground, making it unnecessary to address the latter two grounds.[2]

In reaching this conclusion the court has considered both the text of the relevant prohibition (Contract § 13.1) and the context in which it appears. Only the heading "No Liens," suggests that the prohibition might apply to liens placed by the Contractor. The specific language, however, only refers to a prohibition against *allowing* liens to be placed or to remain on the property. This suggests the section refers to liens placed by others over whom the Contractor might have some control. The remaining subparts of Section 13 address the contractor's obligations vis-a-vis its subcontractors and materialmen. Thus, the text suggests and the context confirms that the prohibition relates only to liens which might be placed by subcontractors and materialmen.

This conclusion is further supported by the existence of a separate section addressing procedures for resolution of disputes between the Contractor and the Owner. Contract § 20. This section sets out various procedural requirements for raising and resolving disputes but does not suggest any limitation on the contractor's statutory right to file a mechanic's lien. Neither does this section reference the separate limitation in Section 13.1 as might be expected if it was intended to

---

[2] Were the court to reach the latter two arguments, it would be inclined to find in Synsil's favor on both arguments for the following reasons. First, the placement and context of the statutory language on which WBI relies for its void-as-against-public-policy argument suggest that the prohibitory language is limited to the particular form of lien authorized by S.C. Code § 29-7-10 *et seq*. WBI's consideration argument, in turn, appears to be dependent on the form of consideration required by S.C. Code § 29-7-20(2) and, therefore, would fail with the failure of WBI's public-policy argument.

apply to liens by a Contractor. The absence of such a reference in the section governing disputes between the Contractor and Owner further supports a narrow reading of the prohibitions in Section 13.1.

In any event, such a significant limitation on a right otherwise granted by statute should be clearly stated. It is not and will not, therefore, be implied from language which, at best, ambiguously suggests such a limitation might have been intended.

For the reasons set forth above, the court grants WBI's motion for partial summary judgment as to any claim or counterclaim by Synsil to the extent the claim is premised on interpretation of Contract § 13.1 to bar WBI from filing a mechanic's lien for monies due from Synsil.[3]

## Synsil's Motions for Partial Summary Judgment

***Quantum Meruit* and Attorneys' Fees.** WBI has offered no opposition to Synsil's motion to the extent it seeks summary judgment as to WBI's claims and counterclaims for *quantum meruit* recovery and for attorneys' fees pursuant to S.C. Code § 27-1-15. Synsil's motion is, therefore, granted as to both of these categories of claim and counterclaim.[4]

**Compensatory Relief Claim and Motion to Void Lien.** Through its motion for summary judgment, Synsil also seeks to void WBI's mechanic's lien and to recover for damages (specifically legal costs and fees) caused by the allegedly improper filing of the lien. Synsil's motion is denied in both respects. For the reasons stated above as to WBI's motion, the court does not find the Contract to prohibit WBI from filing a lien. Further, although the court finds some aspects of WBI's

---

[3] This does not, of course, mean that WBI was justified in filing the lien which may turn on the reasonableness of its underlying claims. As discussed below, at least some bases of WBI's claims are rejected as a matter of law.

[4] As to the *quantum meruit* claim and counterclaim, the court relies on Synsil's first ground: that no such claim may survive in the face of a written contract. As to the attorneys' fees claim, the court relies on all grounds argued by Synsil.

3

claims for additional compensation to be unfounded (*see infra*), it does not find all such claims to be so clearly unsupported as to warrant entry of judgment in Synsil's favor on the present record.

**Overhead Costs.** The primary focus of the parties' dispute relates to whether WBI is entitled to additional payment for "extended general conditions" which allegedly resulted from its additional time on the job. WBI argues that it is entitled to such additional costs despite having charged Synsil using agreed "burdened rates" for additional work performed during at least some of the periods of delay.[5] While it is undisputed that these burdened rates included markups for overhead and profit, WBI argues that these markups were intended only to cover home office overhead, not field office overhead which is often referred to in the industry as "general conditions."

Synsil, by contrast, argues that the burdened rates were intended to be all inclusive. Synsil also argues that WBI cannot seek recovery for what are, in effect, "delay damages" because it failed to file a timely claim for such damages as required by the Contract.

**Scope of costs covered by burdened rates.** The burdened rates fall into two categories. First, certain work was performed on a "Unit Price" basis. Unit pricing was intended to cover the "total cost of complete in-place Work and include[d] profit margin, overhead costs and other costs enumerated in AIA Document A201, Clauses 7.3.1 through 7.3.6.5." Dkt. No. 32-5. The referenced AIA clauses cover, *inter alia*, "additional costs of supervision and field office personnel directly attributable to the change." *See* Dkt. No. 39 at 6 (quoting same).

WBI argues that the generic "overhead" reference should be limited to home office overhead. The court finds this interpretation to be overly narrow, particularly in light of the "total cost"

---

[5] "Burdened rates" refers to rates which include additional amounts to cover expenses such as insurance, employment taxes, and equipment depreciation, or markups to cover overhead and allow a margin for profit, or both.

4

predicate to the clause. There is nothing in the context of this language to suggest it was intended to be given a narrow coverage. To the contrary, the "total cost" reference suggests an intent to avoid claims for peripheral additional costs. Likewise, the court rejects WBI's attempt to limit the above-quoted, incorporated clause from the AIA document to some narrow category of added supervisory and field office costs. Any such interpretation would require a strained reading of the language. The court, therefore, finds that unit prices were intended to and did cover any extended general conditions attributable to or associated with additional work which was compensated under the unit price schedule.

The court reaches the same conclusion as to any work compensated under the "Changes in Work" section of the contract. This section begins with the following introduction: "Actual cost of changes in the Work or additional Work is as follows *(percentages for mark-up are all inclusive of profit and overhead including superintendence, main and field office overhead*, and expense and the use and depreciation of small tools)." Dkt. No. 32-6 (emphasis added). It then includes seven separate sections, each of which allows either for a 5% mark up or for burdened labor rates (the latter being set out on a separate schedule).[6] The latter of the two burdened labor rates specifically covers field supervision as follows: "Additional costs of supervision and field personnel directly attributable to the change shall be compensated at actual salaries plus labor burden covering payroll taxes, worker's compensation, insurance, employee benefits, overhead and profit as identified in Wage Rates Form, Exhibit K." In short, the court finds that the burdened rates allowed by the Unit Price Schedule and Changes in Work section cover not only home-office overhead, but also any

---

[6] It appears that WBI actually applied a markup significantly higher than 5% to its bills for work compensated under the changes in work section. It further appears that these bills have now been paid, although the court makes no specific finding in this order as to whether any particular bill has been paid.

extended general conditions or other costs which result from or are related to the same work for which the compensation is paid.[7]

Therefore, to the extent any extended general conditions resulted from or corresponded to additional work for which WBI was paid a burdened rate under either the unit pricing or changes in work sections of the Contract, the court finds that the Contract mandates a ruling in favor of Synsil. The court, therefore, grants Synsil partial summary judgment interpreting the unit price schedule and change in work payment provisions to be inclusive of any extended general conditions attributable to or corresponding with additional work compensated under either section of the Contract.

This does not, however, end the inquiry. WBI claims that some amounts remain due for delays which were not compensated under either the unit price schedule or change in work provisions. Specifically, WBI appears to claim that certain work paid under the original contract price took longer than originally envisioned due to redrawing of the plans and changes in the order of the work which was to be done. The court has not been able to determine from the present record whether any such delays were otherwise uncompensated using either of the methods addressed above. The court leaves that question open for further development, subject to limitations which may result from any delay in filing of claims (discussed *infra*).

**Damages and Extensions of Time.** Section 2.5 of the Contract addresses delays and extensions of time. This provision expressly prohibits recovery for consequential damages. Extended general conditions would not appear to be precluded by this prohibition. This section also

---

[7] Neither party has expressly suggested that the language is ambiguous nor provided the court with any extrinsic evidence which might aid the court in construing the language in the event the court found it to be ambiguous. Neither has either party provided the court with case law interpreting similar contractual provisions.

6

precludes recovery for damages resulting from delays which were outside the control of the Owner. Delays caused by weather, one source of WBI's claimed delay-damages, would be precluded under this section. Delays caused by redrawing of plans or reordering of work, at least if attributable to actions of the Owner, would not, however, appear to be precluded.[8] The court, therefore, denies summary judgment to the extent any of WBI's claims are founded on extended general conditions attributable solely to delay within the Owner's control (and not disallowed by other rulings herein).

**Timeliness of Notice.** Synsil argues that any claim for damages for delay is barred by WBI's failure to provide prompt notice as required by Section 20 of the Contract. This section requires "written notice of [Claims] within twenty (20) days of the incident giving rise to the Claim or potential Claim."

At this stage in the proceedings, the court finds a genuine issue of material fact as to whether timely notice of claims was given. That said, it appears that only Change Order Requests (CORs) 45 and 49 could serve as timely notice of any claim currently in dispute. The original versions of these CORs appear to have included a request for payment of additional general conditions expenses. These requests were removed from revised CORs 45 and 49 which, nonetheless, included a notation of the intent to resubmit the claim for extended conditions at a later time. The revision was allegedly made based on guidance provided by the Owner's agent. WBI later submitted letters which arguably served to perfect claims first raised in CORs 45 and 49.

Under these circumstances, the court declines to grant summary judgment based on delay

---

[8] The first paragraph under this section refers to delays caused by the Owner *or a separate contractor engaged by the owner*, as well as other causes beyond the control of the contractor (fire, labor disputes, unusual delays in delivery). This paragraph does not, however, address claims for damages. Rather, it addresses the duty to "cooperate to mitigate the impact of [the] delay," including modification of the Substantial Completion deadline. Damages are addressed only in the second paragraph and then only in the negative: indicating what damages will not be allowed. By negative inference, this second paragraph allows damages claims against the Owner for non-consequential damages resulting from delays caused by or within the control of the Owner.

in filing of a written claim, but will limit any claim to claims covered by the original versions of CORs 45 and 49 or other claims for extended general conditions which WBI can demonstrate it was *affirmatively* led to delay filing based on representations by Synsil or its agents, particularly as a result of instructions given in relation to CORs 45 or 49. This would not, however, save any claim which would not have been timely if filed at the time WBI was misled (again, specifically as to CORs 45 and 49).[9]

## CONCLUSION

For the reasons set forth above, the cross-motions for summary judgment are granted in part and denied in part. This matter shall be set for non-jury trial during the term of court beginning January 22, 2008.

IT IS SO ORDERED.

                                                      s/ Cameron McGowan Currie
                                                      CAMERON MCGOWAN CURRIE
                                                      UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
November 5, 2007

C:\Documents and Settings\Glp59\Local Settings\Temp\notesE1EF34\06-2415_&-3141_Synsil_v_Wayne_Bros.wpd

---

[9] The court does not determine whether the particular claims addressed by CORs 45 and 49 would be barred by other portions of this order, most particularly the rulings as to the intent of the Unit Pricing Schedule and Change in Work payment provisions. The parties are encouraged to address these issues in mediation and by pre-trial brief should the matter proceed to trial.